UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------

DANIEL S. PILKINGTON,

                    Plaintiff,

          -against-

TUTOR PERINI BUILDING CORP. and TUTOR
PERINI CORPORATION,

                    Defendants.

---------------------------------------------------------------

TUTOR PERINI BUILDING CORP. and TUTOR
PERINI CORPORATION,

                    Third-Party Plaintiffs,

          -against-

GILSTON ELECTRICAL CONTRACTING CORP.
and HUDSON ELEVATOR GROUP, INC.,

                    Third-Party Defendants.

---------------------------------------------------------------

17cv00060 (DF)

**MEMORANDUM
AND ORDER**

**DEBRA FREEMAN, UNITED STATES MAGISTRATE JUDGE:**

      In this personal-injury case, which is before this Court on consent under 28 U.S.C.

§ 636(c), plaintiff Daniel Pilkington ("Plaintiff") has asserted claims against defendants Tutor

Perini Corporation ("TPC") and Tutor Perini Building Corp. ("TPBC") (collectively, the "Tutor

Perini Companies") pursuant to New York Labor Law ("NYLL") §§ 200, 241(6) and for

common-law negligence, for an injury sustained when Plaintiff allegedly tripped and fell at a

construction worksite controlled by Tutor Perini. (Complaint, dated Sept. 13, 2016 ("Compl.")

(Dkt. 1-1).) The Tutor Perini Companies, in turn, have asserted third-party claims against two

TPC subcontractors, Gilston Electrical Contracting Corp. ("Gilston") and Hudson Elevator

Group ("Hudson") (collectively, the "Subcontractors") for contractual and common-law

indemnification and for breach of contract. Currently before this Court are four separate motions

for summary judgment. As the parties' various motions are interrelated, the Court will address

them all in this single Memorandum and Order, and, for the reasons discussed below, Plaintiff's

motion for partial summary judgment (Dkt. 55) is granted; the Tutor Perini Companies' motion

for summary judgment (Dkt. 60) is denied in its entirety; and the summary-judgment motions of

the Subcontractors (Dkts. 49 and 64) are both granted in part and denied in part.

## BACKGROUND[1]

### A. Factual Background

#### 1. Plaintiff's Trip and Fall

Plaintiff's claims in this case relate to an injury he allegedly sustained on November 19,

2015, when he tripped and fell at a Brooklyn, New York, construction site, where he had been

employed to work by third-party defendant Gilston, one of the construction project's electrical

subcontractors. (Pl. 56.1 Stmt. ¶ 47; Gilston 56.1 Stmt. ¶ 5; *see also* Def. 56.1 Stmt. ¶ 1; Hudson

56.1 Stmt. ¶ 6.) The incident occurred when Plaintiff was exiting the premises via a pathway,

accompanied by his coworker, Thomas Berghorn ("Berghorn") and six to eight other Gilston

employees. (Pl. 56.1 Stmt. ¶¶ 43-50; Def. 56.1 Stmt. ¶¶ 5-7, 10; *see also* Hudson 56.1 Stmt.

¶¶ 9-16; Gilston 56.1 Stmt. ¶¶ 6-8.) It is undisputed that a group of workers and contractors were

standing by the exit, and that there was debris – including four-by-four pieces of wood known as

---

[1] The facts summarized herein are taken from the parties' statements pursuant to Local Civil Rule 56.1 (*see* Third-Party Defendant Hudson's Rule 56.1 Statement of Undisputed Facts, dated Mar. 14, 2019 ("Hudson 56.1 Stmt.") (Dkt. 54); Plaintiff's Rule 56.1 Statement of Undisputed Facts, dated Mar. 15, 2019 ("Pl. 56.1 Stmt.") (Dkt. 58); Defendants/Third-Party Plaintiffs Tutor Perini Building Corp.'s and Tutor Perini Corporation's Statement of Undisputed Material Facts In Support of Their Motion for Summary Judgment, dated Mar. 14, 2019 ("Def. 56.1 Stmt.") (Dkt. 63); Third-Party Defendant Gilston's Rule 56.1 Statement of Undisputed Facts, dated Mar. 18, 2019 ("Gilston 56.1 Stmt.") (Dkt. 64, at ECF 5-9)), and from evidence submitted by the parties in support of their respective submissions. Unless otherwise noted, the facts summarized herein are undisputed.

"dunnage" – on the pathway in front of the exit.  (Pl. 56.1 Stmt. ¶¶ 51-53; Def. 56.1 Stmt. ¶¶ 11-12; *see also* Hudson 56.1 Stmt. ¶¶ 12-14.)  The dunnage was protruding approximately two to three feet into the pathway from an adjacent area that was being used by third-party defendant Hudson, the Project's elevator subcontractor, to store its materials.  (Pl. 56.1 ¶¶ 58, 60; Def. 56.1 ¶¶ 9-13; Hudson 56.1 Stmt. ¶¶ 9-11; *see also* Gilston 56.1 Stmt. ¶¶ 7-11.)  It is undisputed that, as Plaintiff and the other employees maneuvered through the debris on the pathway, he tripped over the dunnage that was extending into the pathway.  (Pl. 56.1 Stmt. ¶¶ 57-58, 60; Def. 56.1 Stmt. ¶¶ 12-13; *see also* Hudson 56.1 Stmt. ¶ 15; Gilston 56.1 Stmt. ¶ 8; Declaration in Support of Justin M. Reilly, Esq., dated Mar. 14, 2019, Ex. 13A ("Reilly Decl.") (Dkt. 57-13) at 66, 96 (Plaintiff testifying at deposition that he "had his feet together" when he tripped because "it was a crowded pathway" and that "I know I tripped over the dunnage in the pathway"); *id.* Ex. 12 (Declaration of Thomas Berghorn, dated Jan. 17, 2019 ("Berghorn Decl.") (Dkt. 57-12); Rex Decl. Exs. R-S.)[2]  Plaintiff fell on his left knee, hip, and elbow, and, after complaining that his knee was hurting, he was helped to the Gilston trailer.  (Pl. 56.1 ¶¶ 63, 67.)

---

[2] In its submissions on the pending motions, Hudson suggests that the question of whether Plaintiff was actually on the pathway at the time of the incident is a disputed issue of fact, citing deposition testimony by Plaintiff that, "because the workers were blocking the pathway," he and the workers with whom he was walking "actually had to make a left and go actually off the pathway a little bit to make the right."  (Hudson 56.1 Stmt. ¶ 14 (citing Solari Decl., Ex. 7 at 68:2-69:25).)  Hudson, however, does not dispute that Plaintiff tripped over debris that was extending into the pathway, regardless of where, exactly, Plaintiff was positioned at the time when he tripped.  (*See* Hudson's Counterstatement to Tutor Perini' 56.1 Statement of Purportedly Undisputed Material Facts, dated Apr. 15, 2019 (Dkt. 69) ¶ 13 (admitting that "[t]here were two pieces of dunnage, both sticking out into the pathway about two to three feet. Plaintiff did not see the dunnage and tripped over the second one.").)  Moreover, a review of Plaintiff's full deposition testimony reveals that he testified unequivocally that he tripped in the pathway, over dunnage (*see* Reilly Decl., Ex. 13A at 66, 96), and that testimony was not inconsistent with the portion of the deposition transcript cited by Hudson.  The fact that Plaintiff tripped over debris that was blocking the pathway is also corroborated by other evidence in the record, including the Berghorn Declaration and contemporaneous incident reports.  (Berghorn Decl. ¶¶ 14-18; Rex Decl. Exs. R-S.)  Accordingly, the Court finds that the testimony cited by

Plaintiff brought his claims in this case against the Tutor Perini Companies, which, he contends, together served as the general contractor on the project. (*See* Compl.) In support of his motion, he not only asserts that the dunnage was in the pathway, creating a workplace hazard, but that the Tutor Perini Companies were aware of the hazard and failed to address it. (*See* Berghorn Decl. ¶¶ 21-23 (Berghorn asserting that he had attended meetings in which the general contractors had received complaints regarding the blocking of the pathway by debris, but that no action was taken to resolve those issues).)

### 2. The Construction Project at Issue, and the Roles of the Tutor Perini Companies

The construction project on which Plaintiff was working involved the construction of the New Academic Building School of Public Health at the State University of New York ("SUNY") Health Science Center at Brooklyn (the "Project"). (Pl. 56.1 Stmt. ¶ 1; Def. 56.1 Stmt. ¶¶ 1-2.) On August 24, 2012, the State University Construction Fund entered into an Agreement with TPC that provided for TPC to act as the general contractor for the Project. (Def. 56.1 Stmt. ¶ 2; Declaration of Beth Rex in Support of Defendants/Third-Party Plaintiffs Tutor Perini Building Corp.'s and Tutor Perini Corporation's Motion for Summary Judgment, dated Mar. 14, 2019 ("Rex Decl.") Ex. L.; *see also* Pl. 56.1 Stmt. ¶ 1; Hudson 56.1 Stmt. ¶ 7; Gilston 56.1 Stmt. ¶ 3.) TPC, through project superintendent Angelica Sepulveda ("Sepulveda"), "oversaw the work of the subcontractors" on the Project and "had overall control of the actual work site." (Pl. 56.1 Stmt. ¶¶ 5-10; *see also* Def. 56.1 Stmt. ¶ 15; Hudson 56.1 Stmt. ¶ 18; Gilston 56.1 Stmt. ¶¶ 9-11.)

---

Hudson is insufficient to raise a genuine dispute as to the material fact that Plaintiff tripped over dunnage that was in the pathway.

At her deposition, however, Sepulveda gave somewhat confusing testimony regarding which of the Tutor Perini Companies was responsible for the Project. The daily reports from the worksite contained TPBC's name at the top, and not TPC's (Pl. 56.1 Stmt., Exs. 7-8; Pl. 56.1 Stmt. ¶¶ 81-83), and, at one point in her deposition, Sepulveda testified that her employer was TPBC (Def. 56.1 Stmt. Ex. P, at 9-10) and that she believed TPBC had been the general contractor for the Project (*id.*, at 12). She amended that testimony, though, once she was shown the contract between TPC and SUNY (*id.* at 15-16), to which TPBC was not a signatory (Def. 56.1 Stmt. ¶ 16). At another point in her deposition, Sepulveda identified Keating Building Corporation ("Keating") as her employer, testifying that it was named on her paystubs. (Def. 56.1 Stmt., Ex. P, at 12-13.) It is not disputed by the parties that the Project was managed by Barry Gleason ("Gleason"), an employee of Keating (Def. 56.1 Stmt. ¶ 14), and Sepulveda suggested that Keating was owned by both TPC and TPBC (Def. 56.1 Stmt, Ex. P, at 12-13). No party has made clear to the Court the precise nature of the relationship between TPC and TPBC.

In her role as project superintendent, Sepulveda was responsible for directing the subcontractors on the locations in which to place their materials. (Pl. 56.1 Stmt. ¶¶ 14-15, 26-28; Def. 56.1 Stmt. ¶¶ 23, 25-26; Hudson 56.1 Stmt. ¶¶ 18, 20, 25; *see also* Gilston 56.1 Stmt. ¶¶ 10-11.) Sepulveda directed Hudson to use a specific location on the first floor, beside the elevator shafts, to store their materials, including elevator rails. (Pl. 56.1 Stmt. ¶¶ 26-28, 30-32; Def. 56.1 Stmt. ¶¶ 23, 25-26.)[3] That area was adjacent to the pathway where Plaintiff tripped

---

[3] Although TPC claims it is "controverted" that Sepulveda made the decision to allow Hudson to use the first floor space, she testified that it was her decision (*See* Pl. 56.1 Stmt. Ex. 5, at 125-126), and TPC proffers no explanation or record evidence, either in their response to Plaintiff's Rule 56.1 Statement or even in their own Rule 56.1 Statement in support of their motion for summary judgment, to demonstrate an actual dispute. (*See generally* Def. 56.1 Stmt.; Defendants Tutor Perini Building Corp's and Tutor Perini Corporation's Response to Plaintiff Daniel S. Pilkington's Rule 56.1 Statement of Undisputed Facts, dated April 18, 2019 (Dkt. 76).)

and fell.  (Pl. 56.1 ¶¶ 58, 60; Def. 56.1 ¶¶ 9-13; Hudson 56.1 Stmt. ¶¶ 9-11; *see also* Gilston 56.1

Stmt. ¶¶ 7-11.)  When elevator rails were delivered to the premises, they were stored on top of

dunnage, which enabled easier lifting and prevented the rails from getting wet.  (Pl. 56.1 Stmt.

¶¶ 35-36, 57; Def. 56.1 Stmt. ¶ 12; Hudson 56.1 Stmt. ¶ 15; Gilston 56.1 Stmt. ¶ 8.)

One of Sepulveda's duties as superintendent was to walk the site every day and, if she

observed an unsafe condition, to have the condition corrected.  (Def. 56.1 Stmt. ¶ 28; *see also*

Hudson 56.1 Stmt. ¶¶ 23, 30; Gilston 56.1 Stmt. ¶ 13.)  Sepulveda testified that she had not heard

prior complaints regarding any debris on that pathway and knew of no prior instances of dunnage

extending into the pathway.  (Rex Decl. Ex. P at 54-56.)

### 3.  The Hudson and Gilston Subcontracts

TPC entered into subcontracts with Hudson, as the sole provider of elevator work for the

Project, and Gilston, as one provider for electrical work for the Project (Def. 56.1 Stmt. ¶¶ 3-4;

Hudson 56.1 Stmt. ¶ 36; Gilston 56.1 Stmt. ¶ 17), and copies of both subcontracts have been

placed before the Court (*see* Declaration of Lauren M. Solani in support of Third-Party

Defendant Hudson Elevator Group, Inc.'s Motion for Summary Judgment, dated Mar. 14, 2019

("Solani Decl.") (Dkt. 50) Ex. 31 (Dkt. 50-31) (the "Hudson Subcontract"), Third-Party

Complaint, dated June 6, 2017, Ex. D (Dkt. 15-4) (the "Gilston Subcontract")[4] (collectively, the

"Subcontracts")).

---

The Court therefore concludes that there is no genuine dispute as to this fact.  *See* Local Rule
56.1(d) (nonmoving party's response to moving party's statement of material facts, "including
each statement controverting any statement of material fact, must be followed by citation to
evidence); Fed. R. Civ. P. 56(c)(1) ("A party asserting that a fact . . . is genuinely disputed must
support the assertion by . . . citing to particular parts of materials in the record").

[4] Although both the Tutor Perini Companies and Gilston have attached portions of the
Gilston Subcontract to their respective motions for summary judgment, neither has attached all
of the provisions relevant to the parties' respective motions (specifically Schedule B, which

The Subcontracts are, in relevant part, substantially similar. With respect to indemnification, each provides:

> To the fullest extent permitted by law, Subcontractor agrees to indemnify, hold harmless and defend Contractor . . . and any agents or employees of any of them and such other parties included as "Indemnified Parties" . . . from and against any and all liability for loss, damage or expense for which the Indemnified Parties may be held liable by reason of injury (including death) to any person (including Subcontractor's employee) . . . arising out of or in any manner connected with the work to be performed for any of the Indemnified Parties . . . . Subcontractor's indemnity obligation under this Section 4.1 of the Subcontract specifically does not include the obligation to indemnify the Indemnified Parties for their own negligence, except to the extent permitted by law. [. . .] Subcontractor hereby expressly waives any provision of the applicable worker's compensation act which would otherwise provide to Subcontractor any immunity from such indemnity.

(*See* Hudson Subcontract ¶ 4.1; Gilston Subcontract ¶ 4.1.) The list of "Indemnified Parties," as defined in Exhibit C of each of the Subcontracts, includes TPC, but not TPBC. (*See* Hudson Subcontract, Ex. C; Gilston Subcontract, Ex. C.)

The Subcontracts also both provide that "[p]rior to commencing the work, Subcontractor shall procure and maintain, at its own expense, the insurance coverage in accordance with the Insurance Schedule set forth in Schedule B." (Hudson Subcontract ¶ 5; Gilston Subcontract ¶ 5.) "Schedule B" to each of the Subcontracts requires Hudson and Gilston to name TPC, among others (although not TPBC), "as additional insureds on all liability policies . . . on a primary, non-contributory basis." (Hudson Subcontract, Schedule B ¶ 10; Gilston Subcontract, Schedule B ¶ 10.)

_____

relates to TPC's breach-of-contract claims, discussed *infra*). The Court has therefore referred to the full copy of the Gilston Subcontract that is attached to the Third-Party Complaint.

### 4.     <u>The Insurance Policies Obtained by the Subcontractors</u>

Hudson obtained a Commercial General Liability ("CGL") insurance policy issued by
The Hartford, covering Hudson for the period from February 8, 2015 to February 8, 2016.
(Solani Decl., Ex. 32 (the "Hudson Policy"), at ECF 8.)[5]  Although Hudson did not explicitly
name TPC as an "additional insured" on the policy (*see generally id.*), the policy contained an
endorsement that added, as an additional insured within its CGL coverage, "[a]ny person or
organization for whom [Hudson was] performing operations when [Hudson had] agreed that
such person or organization be added as an additional insured on [its] policy under . . . a written
contract or agreement that [was] in effect during the term of this policy and such contract [was]
entered into prior to the 'occurrence' of any 'bodily injury.'" (*Id.* at ECF 2, 19.)

Gilston similarly obtained a CGL policy, although its policy was issued by Harleysville
Insurance Co. of New York ("Harleysville"), and the policy provided coverage for the period
from December 1, 2014 through December 1, 2015.  (Declaration of Douglas Langholz in
Support of Third-Party Defendant Gilston's Motion for Summary Judgment, undated but filed
Mar. 18, 2019 ("Langholz Decl.") (Dkt. 64, at ECF 3-4), Ex. 8 (the "Gilston Policy"), at
ECF 2.)[6]  Gilston also did not explicitly name TPC as an "additional insured" on the policy.  (*See
generally id.*)  An endorsement to Gilston's policy, however, provided that its CGL coverage

---

[5] The policy was issued to Action Elevator, Inc., which appears to be the former business
name for Hudson.  *See* http://www.hudsonelevator.com/default.aspx.  Where submitted
documents, such as the Hudson Policy, do not contain easily cited page numbers, the Court will
cite herein to the page numbers affixed to the document by the Court's Electronic Case Filing
("ECF") system.

[6] Although Gilston asserts that its insurance policy was obtained through Nationwide, the
policy, on its face, reflects that it was issued by Harleysville.  (*See generally id.*)  Nationwide
and Harleysville appear to have merged sometime in 2012.

applied to "any person or organization when required in a written contract," and that such coverage was "primary." (*Id.,* at ECF 16-17.)

**B.    Procedural History**

**1.    Plaintiff's Complaint**

On September 13, 2016, Plaintiff filed a Complaint against the Tutor Perini Companies in the Supreme Court of the State of New York, New York County, asserting claims pursuant to the NYLL and for common-law negligence. (Compl.) The Tutor Perini Companies removed the action to this Court on January 4, 2017. (Dkt. 1.)[7] On June 20, 2017, the Tutor Perini Companies asserted third-party claims against Hudson and Gilston for contractual indemnification, common-law indemnification and/or contribution, and breach of contract. (Dkt. 15.) Hudson and Gilston then asserted cross-claims against each other for common-law indemnification and/or contribution. (Dkts. 22, 25.)

Discovery proceeded in this action on both the principal claims and third-party claims, and is now complete. (Dkt. 45.)

**2.    The Four Pending Summary-Judgment Motions**

As noted above, the parties to this action have all filed summary-judgment motions. The first motion was filed by Hudson, and the remaining motions were filed in close succession, all within a few days. The Court starts here by summarizing the motions brought by Plaintiff and the Tutor Perini Companies, and then those brought by the third-party Subcontractors.

---

[7] The Tutor Perini Companies removed the action on the grounds that it met the requirements for diversity jurisdiction pursuant to 28 U.S.C. § 1332(a). (Dkt. 1.) The removal was timely because Plaintiff did not specify the amount of damages he was seeking until he responded to a request for that information on December 12, 2016. (Dkt. 1-5; *see Moltner v. Starbucks Coffee Co.*, 624 F.3d 34, 38 (2d Cir. 2010) ("the removal clock does not start to run until the plaintiff serves the defendant with a paper that explicitly specifies the amount of monetary damages sought").)

### a.    **Plaintiff's Motion**

On March 15, 2019, Plaintiff filed a motion seeking partial summary judgment, solely on the issue of TPC's liability for his injury, pursuant to Section 241(6) of the NYLL.  (Plaintiff's Notice of Motion for Partial Summary Judgment on the Issue of Liability Against Tutor Perini Corporation, dated Mar. 15, 2019 (Dkt. 55); Plaintiff's Memorandum of Law in Support of Motion for Partial Summary Judgment Against Tutor Perini Corporation on the Issue of Liability, dated Mar. 15, 2019 ("Pl. Mem.") (Dkt. 56); Reilly Decl.; Pl. 56.1 Stmt.)  In his motion, Plaintiff argues that the undisputed record demonstrates that the dunnage that caused his fall was protruding onto the pathway, in violation of a regulation promulgated under Section 241(6), specifically 12 N.Y.C.R.R. § 23-1.7(e)(1).  (Pl. Mem., at 2-9.)  Plaintiff also argues that the duty imposed on general contractors pursuant to Section 241(6) is non-delegable, and, therefore, that, even if a subcontractor had placed the materials in the pathway, and TPC had not been aware of or exercised control over their placement, TPC would still be liable to Plaintiff.  (*Id.* at 9-12.)

In an opposition to Plaintiff's motion filed April 18, 2019, the Tutor Perini Companies do not dispute that the cited regulation was violated, but argue that TPC did not know of, create, or cause the violation, and that by directing Sepulveda to walk the site each day and correct violations, it exercised reasonable care and therefore did not violate the law.  (*See* Defendants/Third-Party Plaintiffs Tutor Perini Building Corp.'s and Tutor Perini Corporation's, Memorandum of Law in Opposition to Plaintiff's Motion for Summary Judgment, dated Apr. 18, 2019 ("Def. Opp. to Pl. Mem.") (Dkt. 75), at 5.)[8]

---

[8] Even though Plaintiff's motion is directed solely to the issue of liability, the Tutor Perini Companies also argue that Plaintiff, himself, engaged in culpable conduct, which would "operate to diminish damages if and at such time [as] the trier of fact consider[s] damages."  (*Id.*,

On May 1, 2019, Plaintiff filed a reply, largely reiterating his initial arguments. (*See* Plaintiff's Memorandum in Further Support of Motion for Partial Summary Judgment Against Tutor Perini Corporation on the Issue of Liability, dated May 1, 2019 ("Pl. Reply Mem.") (Dkt. 86).)

### b.     The Tutor Perini Companies' Motion

On March 15, 2019, the Tutor Perini Companies filed their own motion for summary judgment. (Defendants/Third-Party Plaintiffs Tutor Perini Building Corp.'s and Tutor Perini Corporation's Notice of Motion for Summary Judgment, dated Mar. 14, 2019 (Dkt. 60); Defendants/Third-Party Plaintiffs Tutor Perini Building Corp.'s and Tutor Perini Corporation's Memorandum of Law in Support of Their Motion for Summary Judgment, dated Mar. 14, 2019 ("Def. Mem.") (Dkt. 61); Rex Decl.; Def. 56.1 Stmt.) In their motion, the Tutor Perini Companies seek: (1) the dismissal of all of Plaintiff's claims against TPBC on the grounds that it was not a signatory to any contract regarding the Project (Def. Mem., at 2; *see also supra*, at n.8); (2) judgment in their favor on their third-party claims against Hudson and Gilston for contractual indemnification, on the grounds that the language of each of the Subcontracts requires the Subcontractors to indemnify the Tutor Perini Companies for losses and claims "arising out of or in any manner connected with the work" performed on the Project (*see id.* at 3-7); and (3) judgment in their favor on their claims against Hudson for common-law indemnification and/or contribution, on the grounds that the evidence purportedly shows that

---

at 5.) The Tutor Perini Companies additionally take note of the fact that Plaintiff moved for summary judgment only against TPC, and contend that this "evidences [P]laintiff's tacit acknowledgement that TPBC is not a proper party to the action," such that all claims against TPBC it should be dismissed (*id.*, at 5); the Court addresses this argument below in the context of the Tutor Perini Companies' separately filed motion, in which they raise the argument affirmatively.

"Hudson was singularly negligent in placing, allowing and permitting its materials" to be placed in a pathway on the construction site (*id.*, at 7-8).

Plaintiff and the Subcontractors opposed the various component parts of the Tutor Perini Companies' motion that were directed to them. In an opposition memorandum filed on April 15, 2019, Plaintiff argues that there is evidence in record that create a genuine factual issue as to whether TPBC was, in fact, involved with the Project in some capacity. (Plaintiff's Memorandum in Partial Opposition to Defendants' Motion for Summary Judgment and in Response to Third-Party Defendant Hudson Elevator Group, Inc.'s Motion for Summary Judgment, dated Apr. 15, 2019 ("Pl. Opp. to Def. Mem.") (Dkt. 71).) Hudson and Gilston, for their part, both argue that the record shows that TPC's own negligence was the sole cause of the accident, and, therefore, that the Tutor Perini Companies are not entitled to contribution or indemnification under either a contractual or common-law theory; Hudson made its arguments in an opposition memorandum filed on April 15, 2019 (Third-Party Defendant Hudson Elevator Group, Inc.'s Memorandum of Law in Opposition to Third-Party Plaintiffs' Motion for Summary Judgment, dated Apr. 15, 2019 ("Hudson Opp. to Def. Mem.") (Dkt. 67)), and Gilston asserted its arguments in the context of its own summary-judgment motion (*see* Memorandum of Law in Support of Third-Party Defendant Gilston Electrical Contracting Corp.'s Motion for Summary Judgment ("Gilston Mem.") (Dkt. 64, at ECF 10-20)), which, by Order dated April 17, 2019, the Court indicated that it would also treat as an opposition to the Tutor Perini Companies' motion on the issues of contractual and common-law identification (*see* Dkt. 74).

On May 2, 2019, the Tutor Perini Companies filed two separate reply memoranda, one directed to the opposition to their motion that had been filed by Plaintiff (Memorandum of Law of Defendants/Third-Party Plaintiffs Tutor Perini Building Corp. and Tutor Perini Corporation,

in Reply to Plaintiff's Opposition to Tutor Perini Building Corp.'s Motion for Summary Judgment, dated Apr. 30, 2019 ("Def. Reply Mem. to Pl. Opp.") (Dkt. 95), and the other directed to the opposition that had been filed by Hudson (Memorandum of Law of Defendants/Third-Party Plaintiffs Tutor Perini Building Corp. and Tutor Perini Corporation, in Reply to Third-Party Defendant Hudson[]Elevator Group's Opposition to Tutor Perini Building Corp.'s and Tutor Perini Corporation's Motion for Summary Judgment, dated Apr. 30, 2019 ("Def. Reply Mem. to Hudson Opp.") (Dkt. 88)).  Apparently because Gilston did not file a formal opposition to the motion (*see* Dkt. 74), the Tutor Perini Companies did not file a reply as to their motion against Gilston.

### c.      <u>Hudson's Motion</u>

Hudson's summary-judgment motion was filed on March 14, 2019.  (*See* Third-Party Defendant Hudson Elevator Group, Inc.'s Notice of Motion for Summary Judgment, dated Mar. 14, 2019 (Dkt. 49); Memorandum of Law in Support of Third-Party Defendant Hudson Elevator Group, Inc.'s Motion for Summary Judgment, dated Mar. 14, 2019 ("Hudson Mem.") (Dkt. 52); Solari Decl.; Hudson 56.1 Stmt.).)  In its motion, Hudson seeks summary judgment dismissing the Tutor Perini Companies' claim against it for contractual indemnification, as well as both the Tutor Perini Companies' and Gilston's claims against it for common-law indemnification and/or contribution.  (*See* Hudson Mem., 5-10.)  On these points, Hudson contends, *inter alia*, that, regardless of whether Plaintiff may have tripped over its materials, it was TPC that controlled where Hudson's materials were stored; that TPC cannot claim indemnification or contribution when it was the sole negligent party; and that the cross-claim must fail for lack of evidence of any negligence of Hudson.  (*See id*.)  Hudson also argues that it did not breach its contractual obligation to name the Tutor Perini Companies as additional

insureds on its CGL policy, given the language of the policy endorsement affording coverage to entities required by contract to be additional insureds. (*See id.*, at 10-12.) Finally, Hudson asserts that any duty owed to Plaintiff under the NYLL by the Tutor Perini Companies was a non-delegable duty, such that Plaintiff's claim for NYLL violations could not be extended to Hudson, via a third-party claim.[9] (*See id.*, at 12-15.) Relatedly, Hudson contends that the NYLL should not, in any event, be found to apply to the facts purportedly established here, as, according to Hudson, Plaintiff "admittedly attempted to walk around the group of workers" on the pathway, rendering him "the sole proximate cause of his own injuries" (*id.*, at 14; *but see supra*, at n.2), and the allegedly hazardous condition either did not exist, or was "open and obvious" (Hudson Mem., at 14-15).

In their opposition, filed on April 18, 2019, the Tutor Perini Companies disagree with Hudson's characterization of the record, arguing that there is no evidence that TPC was negligent, and that, to the contrary, the undisputed record shows that Hudson was the sole negligent party. (*See generally* Defendants/Third-Party Plaintiffs Tutor Perini Building Corp.'s and Tutor Perini Corporation's, Memorandum of Law in Opposition to Third-Party Defendant Hudson Elevator Group, Inc.'s Motion for Summary Judgment, dated Apr. 18, 2019 ("Def. Opp.

---

[9] Hudson's briefing (*see* Hudson Mem., at 12-15) is somewhat unclear as to the import of this particular argument, which appears, in part, to suggest that Hudson was not a "contractor" or "agent" as defined by Section 241(6) and, in part, to attempt to raise an issue of fact as to whether the state regulation cited by Plaintiff was violated (*see* n.2, *supra*). A review of the cases cited by Hudson in this part of its brief also provides little clarity as to the substance of the argument Hudson is seeking to advance. In any event, no party to this case has pleaded an NYLL claim specifically against Hudson, and Hudson cites to no law that suggests that a general contractor held liable under Section 241(6) would have no claim for contractual indemnification, common-law indemnification, or contribution. (*See generally* Hudson Mem.; Hudson Reply Mem.)

to Hudson Mem.") (Dkt. 78).)[10] Further, the Tutor Perini Companies argue that it would be premature for the Court to dismiss their breach-of-contract claim against Hudson for its alleged failure to name them as additional insureds on its CGL policy. (*See* Def. Opp. To Hudson Mem., at 6.) According to the Tutor Perini Companies, they are currently suing Hudson's CGL carrier in state court, seeking a declaratory judgment that they are covered under Hudson's policy, and, if their claims in that case fail, then Hudson will thereby be found not to have secured the required coverage, and, by extension, to have breached a term of its subcontract. (*See id.*)

On May 2, 2019, Hudson filed a reply memorandum. (Memorandum of Law in Reply and in Further Support of [] Third-Party Defendant Hudson Elevator Group, Inc.'s Motion for Summary Judgment, dated May 2, 2019 ("Hudson Reply Mem.") (Dkt. 87).)

### d.    Gilston's Motion

Gilston filed its summary-judgment motion on March 18, 2019. (Third-Party Defendant Gilston Electrical Contracting Corp.'s Notice of Motion for Summary Judgment, dated Mar. 18, 2019 (Dkt. 64, at ECF 1-2); Gilston Mem.; Langholz Decl.; Gilston 56.1 Stmt.) Gilston seeks dismissal of the Tutor Perini Companies' claim for contractual indemnification and/or contribution, on the grounds that the claim is precluded by the Tutor Perini Companies' own negligent conduct, and that of Hudson. (*See* Gilston Mem., at 7-9.) Gilston, which was Plaintiff's employer, further argues that Section 11 of the New York State Workers' Compensation Law precludes any claims against it for common-law indemnification and/or contribution (including such claims as have been asserted against it by both the Tutor Perini Companies and Gilston, unless there are claims of "grave injury," which, it asserts, Plaintiff did not suffer in this case. (*See id.*, at 9-10.) Lastly, Gilston, like Hudson, contends that it is entitled

---

[10] Gilston did not file an opposition to Hudson's motion. (*See* Dkt.)

to summary judgment in its favor on the Tutor Perini Companies' claim that it breached its subcontract by failing to obtain CGL insurance covering the Tutor Perini Companies as additional insureds; for its part, Gilston points to the language of the policy it obtained through Harleysville, affording "additional insured" status to any party that Gilston was required to indemnify pursuant to a written contract. (*See id.*, at 10-11.)

Hudson filed no opposition to Gilston's motion (*see* Dkt.), but the Tutor Perini Companies did, on April 18, 2019. (Defendants/Third-Party Plaintiffs Tutor Perini Building Corp.'s and Tutor Perini Corporation's, Memorandum of Law in Opposition to Third-Party Defendant Gilston Electrical Contracting Corp.'s Motion for Summary Judgment, dated Apr. 18, 2019 ("Def. Opp. to Gilston Mem.") (Dkt. 82)). In their response, the Tutor Perini Companies do not dispute that the Workers' Compensation Law precludes claims for common-law indemnification and/or contribution against Gilston (*see generally id*.), but they nonetheless contend that Plaintiff's injury arose out of his work for Gilston and was not caused by their own negligence, and that Gilston is thus obligated to indemnify them pursuant to the terms of the Gilson Subcontract. (*See id.*, at 2-4.) The Tutor Perini Companies also argue, as they do against Hudson, that their breach-of-contract claim alleging a failure to procure the required insurance coverage should not be dismissed in light of the pending declaratory judgment action in the state court. (*Id.,* at 4-5.)

On May 2, 2019, Gilston filed a reply memorandum. (Memorandum of Law in Further Support of Third-Party Defendant Gilston Electrical Contracting Corp.'s Motion for Summary Judgment and in Reply to Tutor Perini's Opposition to Gilston's Motion, dated May 2, 2019 ("Gilston Reply Mem.") (Dkt. 94).)

**DISCUSSION**

I.      **SUMMARY JUDGMENT STANDARDS**

Under Rule 56 of the Federal Rules of Civil Procedure, a motion for summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Holt v. KMI-Continental, Inc.*, 95 F.3d 123, 128 (2d Cir. 1996). The moving party bears the burden of showing that no genuine issue of material fact exists. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). This burden may be satisfied "by pointing out the absence of evidence to support the non-movant's claims." *Citizens Bank of Clearwater v. Hunt*, 927 F.2d 707, 710 (2d Cir. 1991) (citing *Celotex*, 477 U.S. at 325).

Once the movant meets this burden, the non-moving party "must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment." *Jaramillo v. Weyerhaeuser Co*., 536 F.3d 140, 145 (2d Cir. 2008) (citing *Celotex*, 477 U.S. at 322-23). Specifically, the non-moving party must cite to "particular parts of materials in the record" or show "that the materials cited [by the movant] do not establish the absence . . . of a genuine dispute" as to any material fact. Fed. R. Civ. P. 56(c)(1). The party opposing summary judgment "may not rely on conclusory allegations or unsubstantiated speculation," *Scott v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998) (citing *D'Amico v. City of New York*, 132 F.3d 145, 149 (2d Cir. 1998)), as "unsupported allegations do not create a material issue of fact," *Weinstock v. Columbia Univ*., 224 F.3d 33, 41 (2d Cir. 2000) (citation omitted). Rather, a party opposing summary judgment "must lay bare [its] proof in evidentiary form and raise an issue of fact sufficient to send to the jury." *Weiss v. La Suisse, Societe D'Assurances Sur La Vie*, 293 F. Supp. 2d 397, 408 (S.D.N.Y. 2003) (internal quotation marks and citations

omitted); *see Smith v. Menifee*, No. 00cv2521 (DC), 2002 WL 461514, at *3 (S.D.N.Y. Mar. 25, 2002) (holding that the non-moving party must present "significant probative evidence" tending to support its claims (citing *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 290 (1968))).

In reviewing the evidentiary record, the court "must view the evidence in the light most favorable to the party against whom summary judgment is sought and must draw all reasonable inferences in his [or her] favor." *L.B. Foster Co. v. Am. Piles, Inc.*, 138 F.3d 81, 87 (2d Cir. 1998) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)); *Brown v. Henderson*, 257 F.3d 246, 251 (2d Cir. 2001). If, even when viewed in this light, there is not "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party," or if the "evidence is not significantly probative," summary judgment may be granted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986).

Under this Court's rules, a party moving for summary judgment under Rule 56 must also submit "a separate, short and concise statement, in numbered paragraphs, of the material facts as to which the moving party contends there is no genuine issue to be tried," Local Civ. R. 56.1(a), and the opposing party must submit a correspondingly numbered statement in response, additionally setting out, if necessary, material facts showing genuine triable issues, *see* Local Civ. R 56.1(b). "The purpose of Local Rule 56.1 is to streamline the consideration of summary judgment motions by freeing the district courts from the need to hunt through voluminous records without guidance from the parties." *Holtz v. Rockefeller & Co.,* 258 F.3d 62, 74 (2d Cir. 2001). Local Rule 56.1, however, does not relieve the party seeking summary judgment of the burden of establishing that it is entitled to judgment as a matter of law. *Id.* Thus, the Court may not rely solely on the statement of undisputed facts contained in the moving party's Rule 56.1

statement; it also must be satisfied that the moving party's assertions are supported by the record. *See Vt. Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004); *see also Zerafa v. Montefiore Hosp. Hous. Co.*, 403 F.Supp.2d 320, 329 n.12 (S.D.N.Y. 2005).

## II.     THE PARTIES' MOTIONS

### A.     Plaintiff Has Demonstrated That He Is Entitled To Partial Summary Judgment on Liability as Against TPC.

Plaintiff has moved for partial summary judgment on liability as against TPC, contending that, because the evidentiary record shows, without genuine dispute, that he was injured as the result of dunnage left in a pathway on the construction site, TPC is liable for his injury as a matter of law, under NYLL Section 241(6) and a state regulation promulgated thereunder. (*See generally* Pl. Mem.) For the reasons set forth below, the Court concludes that Plaintiff has proffered undisputed evidence demonstrating that his injury was caused by a violation of the applicable regulation, on a project for which TPC was the general contractor, and that TPC has not come forward with contrary evidence, sufficient to create a genuine factual dispute as to its liability under the NYLL. A grant of partial summary judgment in Plaintiff's favor is therefore warranted.

Section 241(6) imposes a non-delegable duty on owners, contractors, and their agents to ensure that "areas in which construction, excavation or demolition work is being performed shall be so . . . arranged . . . and conducted as to provide reasonable and adequate protection and safety to the persons employed therein." N.Y. Lab. L. § 241(6); *Rizzuto v. L.A. Wenger Contracting Co.*, 91 N.Y.2d 343, 351 (1998). The New York Court of Appeals has noted that Section 241(6) is intended to "place the *ultimate responsibility* for safety practices at building construction jobs where such responsibility actually belongs, *on the owner and general contractor.*" *Rizzuto,* 91 N.Y.2d at 348 (internal quotations omitted) (emphasis in original). Thus, in order to sustain a

claim under Section 241(6), a plaintiff must establish no genuine dispute of fact that (1) the defendant was an owner, contractor, or agent of an owner or contractor; (2) "that the defendant violated a specific, 'concrete' implementing regulation of the Industrial Code"; and (3) that the violation was the "proximate cause" of the plaintiff's injury. *Rossi v. 140 W. JV Manager LLC*, 95 N.Y.S.3d 126 (Sup. Ct. N.Y. Cty. 2018), *aff'd*, 99 N.Y.S.3d 38 (1st Dep't 2019).

Here, there is no genuine dispute that TPC was the general contractor for the Project (*see* Def. 56.1 Stmt. ¶ 2), nor that there was a violation of 12 N.Y.C.R.R. § 23-1.7(e)(1), which mandates that "all passageways shall be kept free from accumulations of dirt and debris and from any other obstructions or conditions which could cause tripping." (Def. 56.1 Stmt. at ¶¶ 11-13.)[11] A violation of Section 23-1.7 is "sufficiently specific to sustain a claim under Labor Law § 241(6)." *Rossi,* 95 N.Y.S.3d 126; *Pinckney v. 701 Seventh Prop. Owner, LLC*, 64 Misc. 3d 1211(A), 2019 N.Y. Slip Op. 51116 (Sup. Ct. N.Y. Cty. 2019). Furthermore, TPC does not dispute that the dunnage protruding into the pathway was the "proximate cause" of Plaintiff's injury. (Def. 56.1 Stmt. at ¶¶ 11-13.)

Indeed, TPC admits the majority of Plaintiff's Local Rule 56.1 Statement, including that the condition was created by Hudson, a subcontractor for TPC. Nevertheless, TPC disputes that it is liable, because, it contends, (1) TPC did not itself place the dunnage in the pathway; and (2) TPC otherwise provided reasonable and adequate protection by directing Sepulveda to walk the project site every day and correct deficiencies. (Def. Opp. to Pl. Mem., at 2-5.) The Court, however, need not decide whether these arguments have merit, in order to grant summary judgment to Plaintiff on the issue of TPC's liability. First, the undisputed record indicates that TPC had control over the worksite, including the placement of materials. (Pl. 56.1 Stmt. ¶¶ 26-

---

[11] *See supra,* at n.7.

28, 30-32; Def. 56.1 Stmt. ¶¶ 23, 25-26.) Second, it is not obvious to the Court that TPC's assertions regarding Sepulveda's daily review of the project site (*see* Def. 56.1 ¶ 28 (citing Rex Decl. Ex. P at 121-22 (Sepulveda testifying that she would "walk the job site every day" and that "project engineers and other lower level project managers . . . would also walk the field" and report any unsafe conditions)) would be sufficient, in the absence of any information regarding how frequently those "walks" were performed or how thorough those "walks" were in identifying unsafe conditions, so as to establish that TPC exercised reasonable care as a matter of law. In any event, even if TPC did exercise reasonable care and the dunnage was placed by Hudson absent specific direction from TPC, it is well-established that Section 241(6) imposes a non-delegable duty on general contractors, such that they are responsible for violations of a specific provision of the Industrial Code *by their subcontractors*. *Rizzuto,* 91 N.Y.2d at 349-50. Thus, regardless of whether the condition that caused Plaintiff's injury was created by TPC or, as TPC suggests, by Hudson, TPC would still be liable to Plaintiff under Section 241(6). *Id.*; *see* Def. Opp. to Pl. Mem., at 4-5.

As discussed further below, the issue of precisely which party or parties, in whole or in part, contributed to the hazardous condition that caused Plaintiff's injury is an issue for trial. Yet TPC's admissions establish that, no matter how liability may ultimately be apportioned between TPC and any other party, TPC is fully liable to Plaintiff pursuant to Section 241(6). For these reasons, Plaintiff's motion for partial summary judgment against TPS on the issue of liability must be granted.

**B.** **TPBC's Motion For Summary Judgment Dismissing All Claims Against It Must Be Denied, as the Record Reflects Disputed Issues of Fact as to Its Role on the Project.**

The Tutor Perini Companies argue that, regardless of any potential liability of TPC, any and all claims against TPBC should be dismissed as a matter of law, as TPBC was not a signatory to any contracts for the Project. (Def. Mem., at 2.) On reply, the Tutor Perini Companies add that summary judgment in TPBC's favor would be appropriate because, purportedly, TPBC was "not involved" with the Project and because there is "no evidence that anyone employed by TPBC worked at, or had any connection to, the [P]roject." (Def. Reply Mem. to Pl. Opp, at 3-4.) These conclusory assertions regarding TPBC's lack of involvement are not supported by the evidentiary record, and the motion to dismiss all claims against TPBC must therefore be denied.

As noted above, no party has explained to the Court the nature of the relationship between TPBC and TPC (*see, e.g.,* Def. 56.1 Stmt.; Def. Mem.), but Plaintiff has pointed to a number of indicia that TPBC was, in fact, involved in the Project. The evidence cited by Plaintiff in this regard includes including testimony from Sepulveda (the Project superintendent), as well as daily reports from the worksite which appear to be on a form issued by TPBC. (*See* Pl. Opp. to Def. Mem., at 2-3; Rex Decl. Ex. P, at 9-13; Reilly Decl. Exs. 7-8.)

As discussed above, the NYLL imposes a non-delegable duty on "[a]ll contractors and owners *and their agents*" to "provide reasonable and adequate protection and safety" for employees in areas in which construction work is being performed. N.Y. Lab. L. § 241(6) (emphasis added). The New York Court of Appeals has held that a party may be considered an "agent" under the NYLL where the party had "the ability to control the activity which brought about the injury." *Walls v. Turner Const. Co.*, 4 N.Y.3d 861, 863 (2005); *see also Starkey v.*

*Capstone Enterprises of Portchester*, No. 06cv1196 (KMK), 2008 WL 4452366, at *5 (S.D.N.Y. Sept. 30, 2008) (citing *Walls*). Thus, the absence of TPBC's signature on any contract related to the project is not, as the Tutor Perini Companies urge, dispositive of the question of TPBC's liability. *Id.*

Rather, the Court finds that there are genuine disputes of material fact regarding TPBC's involvement in the Project, as well as regarding its role in controlling the movement and placement of materials at the Project site and inspecting its pathways.[12] The appearance of TPBC's name on the daily reports from the Project is not, as the Tutor Perini Companies claim, "conjecture," but rather evidence that TPBC may have been involved in the Project in some type of supervisory capacity. (Pl. 56.1 Stmt., Exs. 7-8; Pl. 56.1 Stmt. ¶ 81-83.) The Tutor Perini Companies also concede that Sepulveda held the "highest position in the field" for the Project (Pl. 56.1. Stmt. ¶ 7), yet Sepulveda's testimony as to the distinction between TPC and TPBC was at best confused. She initially testified that her employer was TPBC, although she then said that she was employed by Keating (*see* Rex Decl. Ex. P, at 9-10, 12-13); in response to a question as to whether TPC or TPBC owned Keating, she answered "to my knowledge *they* do" (*id.*, at 13 (emphasis added)); and, at times, she directly implicated TPBC as having participated in the Project (*see id.* at 9-10, 15-16 (Sepulveda suggesting that TPBC was the general contractor and her employer)). The fact that Sepulveda corrected herself by identifying TPC as the general contractor once she was shown a copy of the general contract (*id.*, at 15-16) does not negate all of the other indicia of TPBC's involvement.

---

[12] The Court rejects the Tutor Perini Companies' argument that Plaintiff made a "tacit admission" that TPBC is not a proper party by moving for summary judgment solely against TPC. (*See* Def. Opp. to Pl. Mem., at 5.) Instead, the Court views Plaintiff's motion as reflecting that Plaintiff reasonably chose to make a motion targeted to an issue as to which no material facts are in dispute.

In light of the foregoing, the Court cannot, at this stage, determine as a matter of law that TPBC was not an "agent" of TPC, as defined under the NYLL and thus equally responsible for the claimed violation. For this reason alone, TPBC is not entitled to summary judgment dismissing the claims that have been asserted against it in this action.

## C. Neither TPC Nor the Subcontractors Are Entitled to Summary Judgment on TPC's Third-Party Claims for Contractual Indemnification.

Both the Tutor Perini Companies and the Subcontractors, respectively, have argued that they are entitled to summary judgment in their favor on the Tutor Perini Companies' third-party claims that, under the terms of the Subcontracts, Hudson and Gilston are required to indemnify TPC on Plaintiff's claims.[13] (Def. Mem., at 3-7; Hudson Mem., at 5-10; Gilston Mem., at 7-9.) The evidentiary record reflects, however, that there is a genuine issue of material fact as to whether TPC, through its own negligence, was 100 percent responsible for the fact that the pathway where Plaintiff fell was obstructed, or whether Hudson, which may have stored its materials in a manner that caused dunnage to extend into the pathway, was wholly or partially the negligent party. This disputed issue precludes summary judgment to TPC, Hudson, and Gilston, on TPC's contractual-indemnification claims.

---

[13] It is unclear from the parties' submissions whether the contractual-indemnification provisions in the Subcontracts, discussed below, would give contractual rights solely to TPC (as the signatory to the Subcontracts) or also to TPBC (which might, together with TPC, qualify under the Subcontracts as an "Indemnified Part[y]" (*see infra*, at n.14)). It is equally unclear whether one or both of the Tutor Perini Companies are the intended subjects of the parties' motions with respect to the contractual-indemnification claims. (*See, e.g.*, Def. Mem., at 4 (arguing that "both Gilston and Hudson are contractually obligated to defend, indemnify and hold-harmless [TPC]"); *id.*, at 5 (discussing Hudson's "obligation to indemnify Tutor Perini and TPBC"); Hudson Mem., at 8-10 (discussing only TPC's negligence but concluding that "the only parties arguably liable for [Plaintiff's] injuries would be Third-Party Plaintiffs").) In this Memorandum and Order, the Court will focus on TPC in its discussion of contractual indemnification, but the Court notes that the analysis herein would apply with equal force to TPBC.

1. **TPC's Contractual-Indemnification Claim Against Hudson**

"Under New York law, the right to contractual indemnification depends upon the specific language of the contract." *In re Bridge Const. Servs. of Fla., Inc.,* 140 F. Supp. 3d 324, 331 (S.D.N.Y. 2015) (alteration and citation omitted). An owner or general contractor to a construction contract, like the Subcontracts here, may not contract to be indemnified for its own negligence. N.Y. Gen. Oblig. Law § 5-322.1. To establish negligence, it must be shown that the negligent party had a duty of care, that the party breached that duty, and that the breach caused the plaintiff's injury. *In re Bridge Const. Servs. of Fla., Inc.,* 39 F. Supp. 3d 373, 382 (S.D.N.Y. 2014).

In this case, the Hudson Subcontract (which, in all material respects, mirrors the Gilston Subcontract) contains an express indemnification provision, with two separate clauses that are relied upon by TPC and Hudson in support of their respective positions that each is entitled to summary judgment on TPC's contractual-indemnification claim. First, the indemnification provision requires Hudson to indemnify TPC (identified as an "Indemnified Part[y]")[14] on a claim for "injury . . . to any person (including Subcontractor's employees) . . . *arising out of or in any manner connected with* the work to be performed for any of the Indemnified Parties." (Hudson Subcontract ¶ 4.1 (emphasis added).) Second, the provision further states that

_____

[14] The "Indemnified Parties" are defined in Exhibit C to the Hudson Subcontract, and expressly include TPC, but not TPBC. (Hudson Subcontract, Ex. C ¶ 3.) The Court notes the possibility that TPBC would qualify as a "manager[], parent, subsidiary [or] affiliated company" of TPC, and would therefore be entitled to indemnification consistent with the agreement's indemnification provision. (*Id.*) As indicated above, however, the relationship between TPC and TPBC is not clear to the Court from the parties' briefing or from the Complaint or Third-Party Complaint filed in this action. Further, Hudson has not moved for dismissal of TPBC's contractual-indemnification claim on the grounds that TPBC is not an "Indemnified Part[y]" as defined by the Hudson Subcontract. Under these circumstances, the Court will not address the issue herein. Nor will the Court address the issue in connection with its evaluation, *infra*, of the third-party claims against Gilston, as the parties have not raised it in that context, either.

"Subcontractor's indemnity obligation under this Section 4.1 of the Subcontract . . . specifically does not include the obligation to indemnify the Indemnified Parties for their own negligence, except to the extent permitted by law." (*Id.*)

As to the first of these clauses, Hudson argues that Plaintiff's injury did not "aris[e] out of" its work for TPC, contending that there was "simply no nexus between the dunnage and Hudson's work." (Hudson Mem., at 4.) In particular, Hudson contends that the record does not support Plaintiff's assertion that any elevator rails (which would have been materials used by Hudson on the job) were actually resting on the dunnage over which Plaintiff tripped. (Hudson Mem., at 4, 9-10.) Hudson, however, does not dispute that the dunnage in question was extending into the pathway from the portion of the worksite that had been specifically assigned to Hudson for the storage of its materials. (*See supra,* at n.2.) Moreover, Hudson has not come forward with any evidence suggesting that any other entity or person ever placed materials in Hudson's designated storage area, or any evidence that would call into question that the dunnage belonged to Hudson. (*See generally* Hudson 56.1 Stmt.; Hudson Mem.) To the extent Hudson asserts that TPC was responsible for designating where materials were to be placed, that may go to the question of comparative fault, but there is colorable evidence that the materials belonged to Hudson, and no indication that the materials were related to the work of anyone else. Accordingly, for purposes of summary judgment, the Court cannot find that the record demonstrates, as Hudson would urge, the lack of any nexus between the dunnage and Hudson's work on the Project. Thus, the Court must reject Hudson's argument that it cannot be held to the contractual indemnification because Plaintiff's injury did not arise from Hudson's work for TPC, and move on to consider the second relevant clause of the indemnification provision.

As to the second clause, if the record shows, without any genuine dispute, that TPC was the *only* actor that could be found to have been negligent with respect to the placement of the dunnage in the pathway, then TPC would not be able to invoke the indemnification provision of the Hudson Subcontract, regardless of whether Plaintiff's injury arose from Hudson's work on the Project. (*See* Hudson Subcontract ¶ 4.1.) If, on the other hand, the evidence is capable of suggesting either that TPC was free from negligence, or that any other actor, including Hudson, was also negligent in the placement of the dunnage, then TPC could still have recourse under the indemnification provision, at least up to the extent of that other actor's percentage of fault. (*See id.*; *see also* N.Y. Gen. Obl. Law § 5-322.1 ("This subdivision shall not preclude a promisee requiring indemnification for damages arising out of bodily injury to persons or damage to property caused by or resulting from the negligence of a party other than the promisee, whether or not the promisor is partially negligent."); *Brooks v. Judlau Contracting, Inc.,* 11 N.Y.3d 204, 207 (2008) ("a partially negligent general contractor [may] seek contractual indemnification from its subcontractor so long as the indemnification provision does not purport to indemnify the general contractor for its own negligence.").) In its motion, TPC argues that it was free from fault, and points the finger at Hudson as the solely negligent party (*see* Def. Mem., at 5, 7-8), while Hudson argues that TPC was solely responsible for authorizing, approving, and directing where Hudson's materials were to be placed, and that any negligence in the placement of those materials must therefore be entirely attributable to TPC (*see* Hudson Mem., at 8-9).

On the record before the Court, the circumstances of how the dunnage came to be placed in the pathway is not clear. Neither the Tutor Perini Companies nor Hudson – nor any other party, for that matter – has proffered any evidence regarding when the dunnage was placed, who placed it, or how long it had been in that location. (*See generally* Def. 56.1 Stmt; Hudson 56.1

Stmt; *see also* Pl. 56.1 Stmt.; Gilston 56.1 Stmt.)  The Tutor Perini Companies, however, have

presented some evidence that Hudson caused the condition that resulted in Plaintiff's injury.

There is certainly evidence (albeit disputed by Hudson) that the dunnage over which Plaintiff

tripped was being used to support Hudson's work material, specifically an elevator rail.  (*See,*

*e.g.,* Berghorn Decl; Rex Decl. Exs. R-S.)  There is also undisputed evidence that the location

next to the pathway where the incident occurred was the location used by Hudson to store its

materials (Pl. 56.1 Stmt. ¶¶ 26-28, 30-32; Def. 56.1 Stmt. ¶¶ 23, 25-26), and that dunnage

extended into the pathway from that location, a condition violative of an applicable state

regulation.  *See* 12 N.Y.C.R.R. § 23-1.7(e)(1).  As evidence that a contractor failed to comply

with safety regulations can be evidence of negligence, *Guarascio v. Drake Assocs. Inc.*, 582

F. Supp. 2d 451, 456 (S.D.N.Y. 2008), a reasonable juror could conclude, from this evidence,

that Hudson was negligent.

On the other hand, Hudson has come forward with evidence that TPC may have itself

acted negligently in a manner that contributed to the condition that caused Plaintiff's injury.  It is

undisputed that Sepulveda controlled the placement of materials on the Project site, and that

Sepulveda herself directed Hudson to place its materials in the location by the pathway.  (Pl. 56.1

Stmt. ¶¶ 26-28, 30-32; Def. 56.1 Stmt. ¶¶ 23, 25-26.)  Although Hudson concedes that it was

directed that it could not block the pathway with its materials (Hudson Mem., at 8), the record

shows that TPC staff were also responsible for ensuring that the pathways remained clear, as

evidenced by their admission that they assigned staff to walk the Project site and report any

unsafe condition (Def. 56.1 Stmt. ¶ 28; *see also* Hudson 56.1 Stmt. ¶¶ 23, 30; Gilston 56.1 Stmt.

¶ 13).  It is not clear, though, how frequently TPC staff monitored the Project site for safety

issues or when the pathway was last checked prior to Plaintiff's accident, raising a question of

fact as to whether TPC's supervision was adequate. *See, e.g., Ladignon v. Lower Manhattan Dev. Corp.,* 128 A.D.3d 534, 535, 10 N.Y.S.3d 28, 30 (1st Dep't 2015) ("There are triable issues as to constructive notice of the defective condition . . . since the record is unclear as to when the [condition] was last inspected prior to plaintiff's fall").

There is also evidence that there had been prior complaints to TPC specifically regarding debris on the same passageway in which Plaintiff was injured, and that TPC failed to take any action to correct the problem. (Berghorn Declaration ¶¶ 21-23.)[15] A reasonable juror could therefore conclude that, if Hudson did not comply with TPC's directives, then TPC breached its duty of care in failing to take adequate steps to ensure such compliance. *Guarascio*, 582 F. Supp. 2d at 456 (denying summary judgment on negligence claim where facts could persuade a reasonable juror that general contractor failed to provide adequate supervision and to comply with safety regulations); *see also Minall v. Pyramid, Inc.,* 875 F. Supp. 228, 230 (S.D.N.Y. 1995) (genuine issue of fact regarding notice where Plaintiff had previously complained of dangerous condition and general contractor employed inspectors to ensure safety of worksite); *Urban v. No. 5 Times Square Dev., LLC,* 879 N.Y.S.2d 122, 126 (1st Dep't 2009) (issue of fact precluded summary judgment on negligence claim where general contractor "had the responsibility to coordinate the work of the various subcontractors on the site, was in charge of site safety and had

---

[15] Although the Tutor Perini Companies dispute that TPC had received any prior complaints (*see* Def. Opp. to Pl. Mem., at 3 (citing Rex Decl. Ex. P at 54-56)), the testimony they cite – that Sepulveda could not personally recall any complaints – is not inconsistent with other evidence that complaints were made, either to Sepulveda or others. Furthermore, to the extent the evidence is inconsistent on this point, resolving the inconsistency would involve determining the credibility of various witnesses, which the Court may not undertake at the summary-judgment stage. *See, e.g., Urbont v. Sony Music Entm't,* 831 F.3d 80, 88 (2d Cir. 2016) ("When deciding a summary judgment motion, a court's function is not to weigh the evidence, make credibility determinations or resolve issues of fact" (internal alterations and citation omitted)).

a site safety director on the work site" and therefore could have had constructive notice of the dangerous condition); *Hauptner v. Laurel Dev., LLC*, 885 N.Y.S.2d 68, 71 (1st Dep't 2009) (constructive notice existed where general contractor had been aware of similar dangerous condition but failed to "put any safety procedures into practice to prevent further problems").

In short, the Court cannot conclude as a matter of law, on the record before it, that TPC was *free* from all negligence (such that it would be entitled to summary judgment in its favor on its contractual-indemnification claim), or that it was the *sole* negligent actor with respect to the placement of the dunnage (such that its contractual-indemnification claim against Hudson could not survive). *See Wausau Bus. Ins. Co. v. Turner Const. Co.,* 143 F. Supp. 2d 336, 344 (S.D.N.Y. 2001) (denying summary judgment on contractual indemnification claim where it was not clear whether general contractor was negligent). For these reasons, neither TPC nor Hudson is entitled to summary judgment with respect to this third-party claim.

### 2.     TPC's Contractual-Indemnification Claim Against Gilston

While the issues regarding TPC's third-party claim against Gilston for contractual indemnification are not exactly the same as the issues regarding TPC's parallel claim against Hudson, they are very similar, and the submitted evidence compels the same outcome.

First, as to the question of whether Plaintiff's injury may be found to have "aris[en] out of or in any manner connected with the work to be performed" for TPC by Gilston (Gilston Subcontract ¶ 4.1), Gilston argues that "the accident in question did not 'arise out of' the work contracted for" because "Gilston's work was not located in the area that the accident took place" (Gilston Mem., at 9). The New York Court of Appeals, however, as well other judges of this Court, interpreting state law, have held that language similar to the language of the Gilston Subcontract includes, by necessity, any injury that occurs as a worker enters or exits the

worksite. *See, e.g., Arch Specialty Ins. Co. v. Farm Family Cas. Ins. Co.,* 238 F. Supp. 3d 604, 615 (S.D.N.Y. 2017) (collecting cases); *Cevasco v. Nat'l R.R. Passenger Corp.*, 606 F. Supp. 2d 401, 411 (S.D.N.Y. 2009) ("The term 'arising out of' is 'broad and sweeping.'" (citation omitted)); *O'Connor v. Serge Elevator Co.*, 58 N.Y.2d 655, 657-58 (1982), *amended,* 58 N.Y.2d 799, 445 N.E.2d 649 (1983) ("The contract could not be performed, of course, unless [subcontractor's] employees could reach and leave their workplaces on the job site. The instant injuries, occurring during such a movement, must be deemed as a matter of law to have arisen out of the work."). Gilston has cited no law to the contrary (*see* Gilston Mem., at 9), and its attempt to distinguish the language in *O'Connor* from the language of its own subcontract is vague and unpersuasive. The Court therefore concludes that Gilston has failed to demonstrate that that Plaintiff's injury did not arise out of Gilston's work for TPC.

Second, as to the additional relevant clause of the subcontract's indemnification provision, Gilston argues, somewhat confusingly, that TPC and Hudson, together, were "100% negligent and responsible for [P]laintiff's injury producing accident" (Gilston Mem., at 7 (*see also id.*, at 9 ("it is inarguable that [TPC], along with its own agent[]/subcontractor[], Hudson, were 100% negligent in [P]laintiff's injury producing accident"))), and also that "the sole party whose negligence was the proximate cause of the injury producing accident was the general contractor, [TPC]" (*id.*, at 8). The reality is that, as set out above, there is an issue of fact as to whether TPC or Hudson (or both to some degree), was the negligent actor here. As Plaintiff has demonstrated that, under the NYLL, TPC should be held liable for the full amount of any damages that Plaintiff can prove that he suffered as a result of his injury, TPC may, in turn, seek contractual indemnification from Gilston for any percentage of those damages that is shown, at

trial, to have been attributable to a different actor – even if that actor happens to be Hudson, not

Gilston.  (Gilston Subcontract ¶ 4.1; *Brooks,* 11 N.Y.3d at 207.)

      For these reasons, neither TPC nor Gilston is entitled to summary judgment with respect

to TPC's claim against Gilston for contractual indemnification.

      **D.**      **With Respect to All of the Asserted Claims for Common-Law**
                **Indemnification and/or Contribution, Only Gilston Is Entitled**
                **to Summary Judgment Dismissing the Claims Asserted Against It.**

      The Tutor Perini Companies have also moved for summary judgment in their favor on

their common-law indemnification and/or contribution claims against Hudson, and both Hudson

and Gilston have moved for summary judgment dismissing the common-law

indemnification/contribution claims that have been asserted against them, either by way of third-

party claims or cross-claims.  (Def. Mem., at 7-8; Hudson Mem., at 7-10; Gilston Mem., at 9-

10.)  As to this aspect of the parties' motions, only Gilston's arguments are persuasive.

      A party asserting entitlement to common-law indemnification must first prove itself free

from negligence.  *Smith v. New York Enter. Am., Inc.*, No. 06cv3082 (PKL), 2008 WL 2810182,

at *8 (S.D.N.Y. July 21, 2008) ("'[A] party who has itself actually participated to some degree in

the wrongdoing cannot receive the benefit' of implied indemnification." (citation omitted))

(collecting cases).  By contrast, a party may be entitled to contribution even if it was negligent to

some degree, even though, as for a common-law indemnification claim, the party seeking

contribution must demonstrate at least some negligence by the party from which contribution is

sought.  *Amguard Ins. Co. v. Getty Realty Corp.,* 147 F. Supp. 3d 212, 218 (S.D.N.Y. 2015) ("the

breach of duty by the contributing party must have had a part in causing or augmenting the injury

for which contribution is sought" (citation omitted); *see also id.*, at 220 ("A cause of action for

common-law indemnification can be sustained only if . . . the party from whom indemnity is

sought ha[s] breached a duty to a third person") (internal quotations and alterations omitted)); *see Vrazel v. Long Island R.R. Co.,* No. 14CV6209ADSARL, 2016 WL 6603998, at *8 (E.D.N.Y. Nov. 8, 2016) ("The basic distinction between common law indemnification and contribution is that 'a party who has itself participated to some degree in the wrongdoing cannot receive the benefit of the [common law indemnity] doctrine,' but only of contribution." (quoting *Durabla Mfg. Co. v. Goodyear Tire & Rubber Co.,* 992 F. Supp. 657, 660 (S.D.N.Y. 1998) (internal alteration omitted))).

Here, as discussed above, the evidence before the Court shows that TPC violated its obligations to Plaintiff under Section 241(6) of the NYLL. (*See* Discussion, *supra*, at Section II(A).) Standing alone, however, this does not enable the Court to conclude that TPC was itself negligent, and therefore not entitled to common-law indemnification. Under New York law, a general contractor's liability under Section 241(6) may be "purely vicarious" (in other words, it may be derived solely from the negligence of another party, such as a subcontractor), and, when that is the case, the general contractor is still entitled to common-law indemnification from the party whose negligence caused the injury. *Kelly v. Diesel Const. Div. of Carl A. Morse, Inc.*, 35 N.Y.2d 1, 6 (1974); *see Bermejo v. New York City Health & Hosps. Corp.*, 989 N.Y.S.2d 490, 495 (2014) (reversing dismissal of property owner's cross-claim for common-law indemnification where property owner offered proof that it was only vicariously liable under the Labor Law, and not itself negligent); *Singh v. Congregation Bais Avrohom K'Krula*, 752 N.Y.S.2d 380, 382 (2002) ("An owner or general contractor held vicariously liable under Labor Law Section 240(1) may seek common-law indemnification from the parties who are at fault"); *Tapia v. 126 First Ave., LLC*, 724 N.Y.S.2d 29, 29 (2001) (where contractor's liability was "purely vicarious," contractor was "entitled to full common-law indemnification

from the actively negligent contractor"); *Parris v. Shared Equities, Co.*, 721 N.Y.S.2d 634, 635

(2001) (where property owners were liable under Section 241(6) for injury occurring on their

property, "the owners were entitled to common-law indemnification from [contractor] for their

purely statutory liability pursuant to Labor Law §§ 240(1) and 241(6)").

In this instance, TPC asserts that a subcontractor on the Project, Hudson, caused the

condition that resulted in Plaintiff's injury, which, if true, would mean that TPC is merely

vicariously liable to Plaintiff under Section 241(6), and could still prevail on a common-law

indemnification claim against Hudson. As already discussed, however, Hudson disputes the

evidence that it was negligent, and instead points to evidence suggesting that TPC was, in fact,

the negligent party. Should a jury determine that TPC engaged in negligent conduct that

contributed to Plaintiff's injury in some way, common-law indemnification would be unavailable

to TPC under the law. These parties' genuine dispute regarding the degree (if any) of their

relative negligence precludes summary judgment to either party on TPC's third-party claim

against Hudson for common-law indemnification. *See, e.g., Chimbay v. AvalonBay*

*Communities, Inc.,* 742 F. Supp. 2d 265, 279 (E.D.N.Y. 2008) ("Because none of the parties in

this action have made any conclusive showings regarding the relative degrees of fault

attributable to each party, summary judgment is not proper on [the plaintiff's] common-law

indemnification claim."). Likewise, given that the record is unclear as to whether TPBC may

have taken on responsibilities related to the placement of materials on the jobsite, and may have

acted negligently in connection with the performance of those responsibilities, a grant of

summary judgment to either TPBC or Hudson would also be inappropriate with respect to

TPBC's common-law indemnification claim against Hudson. Finally, because issues of fact

exist regarding Hudson's potential negligence, Hudson is not entitled to summary judgment dismissing Gilston's cross-claim against it for common-law indemnification.

Similarly, with respect to contribution, the Court cannot conclude whether Hudson was negligent, and therefore a party from which either the Tutor Perini Companies or Gilston could seek contribution. Thus, the Tutor Perini Companies' motion for summary judgment on their contribution claims against Hudson, as well as Hudson's motion for summary judgment dismissing the contribution claims that have been asserted against it by both the Tutor Perini Companies and Gilston, are properly denied.

As for the common-law indemnification and contribution claims asserted by the other parties against Gilston, however, the analysis is different.[16] Gilston correctly asserts that New York Workers' Compensation Law provides the exclusive remedy for an employer's liability arising from an injury of its employee, unless that employee suffered a "grave injury."[17] N.Y. Workers' Comp. L. § 11; *see Rivera v. Home Depot USA, Inc.*, 776 F. App'x 4, 6 (2d Cir. 2019) (Summary Order); *Isabella v. Koubek*, 733 F.3d 384, 388 (2d Cir. 2013).[18] Nowhere in

---

[16] Although Hudson's cross-claim against Gilston did not explicitly mention common-law indemnification, it did seek, *inter alia,* "an adjudication of full indemnification . . . [and] an apportionment of damages in accordance with such findings, be same at common law or pursuant to statute or contract." (Dkt. 22 ¶ 22.)

[17] A "grave injury" under the Workers' Compensation Law is defined as "death, permanent and total loss of use or amputation of an arm, leg, hand or foot, loss of multiple fingers, loss of multiple toes, paraplegia or quadriplegia, total and permanent blindness, total and permanent deafness, loss of nose, loss of ear, permanent and severe facial disfigurement, loss of an index finger or an acquired injury to the brain caused by an external physical force resulting in permanent total disability." N.Y. Workers' Comp. Law § 11.

[18] Gilston does not contend that the Workers' Compensation Law precludes TPC's claim for contractual indemnification. (*See generally* Gilston Mem.) Section 11 includes an exception for cases in which a party seeks from the employer "contribution or indemnification based upon a provision in a written contract entered into prior to the accident or occurrence by which the employer had expressly agreed to contribution to or indemnification of the claimant or person asserting the cause of action for the type of loss suffered." *Id.* As the Gilston Subcontract

the record before the Court is there any suggestion that Plaintiff suffered a "grave injury." (*See* n.17, *supra; see generally* Pl. 56.1 Stmt.; Def. 56.1 Stmt; Hudson 56.1 Stmt.; Gilston 56.1 Stmt.) In their opposition, the Tutor Perini Companies do not even respond to Gilston's argument (*see generally* Def. Opp. to Gilston Mem.), and Hudson has not responded to Gilston's motion at all, leading the Court to conclude that both the Tutor Perini Companies and Hudson have considered Gilston's position and decided to waive their common-law indemnification and contribution claims against Gilston. *Rohn Padmore, Inc. v. LC Play Inc.*, 679 F. Supp. 2d 454, 459 (S.D.N.Y. 2010) ("Where one party fails to respond to an opposing party's argument that its claim must be dismissed, courts may exercise their discretion and deem the claim abandoned" (citation omitted)). Moreover, there is absolutely no evidence in the record to suggest that Gilston engaged in any negligent conduct with respect to the placement of the dunnage over which Plaintiff tripped. (*See generally* Pl. 56.1 Stmt.; Pl. Mem.; Def. 56.1 Stmt.; Def. Mem.; Hudson 56.1 Stmt.; Hudson Mem.; Gilston 56.1 Stmt.; Gilston Mem.; *see also Schwarz v. FedEx Kinko's Office,* No. 08cv6486 (THK), 2009 WL 3459217, at *15 (S.D.N.Y. Oct. 27, 2009) (dismissing contribution claim at summary judgment where the record contained no triable issues of fact regarding third-party defendant's negligence).) Accordingly, Gilston is entitled to summary judgment dismissing both the Tutor Perini Companies' third-party claims and Hudson's cross-claim against it for common-law indemnification and/or contribution.

---

contains such a provision, TPC's claim against Gilston for contractual indemnification is not precluded by this Section.

**E.** **As the Record Shows That Hudson and Gilston Both**
**Obtained Insurance as Required by the Subcontracts,**
**They Are Entitled to Summary Judgment Dismissing the**
**Tutor Perini Companies' Breach-of-Contract Claims Against Them.**

The elements of a breach-of-contract claim are well established: "To sustain a breach of contract claim, a plaintiff must prove (1) there was an agreement; (2) adequate performance of the contract by the plaintiff; (3) breach of the contract by the defendant; and (4) damages." *Wiedis v. Dreambuilder Investments, LLC*, 268 F. Supp. 3d 457, 470 (S.D.N.Y. 2017). The parties do not raise any dispute as to whether the Subcontracts were valid contracts between TPC on the one hand, and Hudson and Gilston on the other, or as to whether TPC adequately performed under contracts. (*See generally* Def. 56.1 Stmt.; Hudson 56.1 Stmt.; Gilston 56.1 Stmt.) Thus, for purposes of the Subcontractors' motions for summary judgment dismissing the Tutor Perini Companies' breach-of-contract claims, the only relevant inquiry is whether Hudson and Gilston have shown the lack of a genuine dispute as to their asserted compliance with their obligations under the Subcontracts. (*See generally* Def. 56.1 Stmt.; Hudson 56.1 Stmt.; Gilston 56.1 Stmt.; *Drapkin v. Mafco Consol. Grp., Inc.*, 818 F. Supp. 2d 678, 685 (S.D.N.Y. 2011) ("In a breach of contract action, in order for a party to prevail on its summary judgment motion, it must be clear at the outset that there are no genuine issues of material fact that . . . the party did not breach an agreement" (internal quotations and alterations omitted)).)

As a preliminary matter, on the record before the Court, it does not appear that the Subcontracts required the Subcontractors to name TPBC as an additional insured. (*See* Hudson Subcontract ¶ 5; *id.* Schedule B ¶ 10; Gilston Subcontract ¶ 5; *id.* Schedule B ¶ 10.) TPBC has proffered no evidence to the contrary. (*See generally* Def. 56.1 Stmt.) Therefore, to the extent the Tutor Perini Companies seek to assert breach-of-contract claims against Hudson and Gilston

based on their purported failures to name TPBC as an additional insured, the Subcontractors are entitled to summary judgment in their favor on those claims.

Further, in support of their respective motions, both Hudson and Gilston have attached insurance policy documents, which, although not explicitly naming TPC, appear on their face to include TPC as an additional insured. Specifically, Hudson's CGL policy includes, as an additional insured: "Any person or organization for whom you are performing operations when you have agreed that such person or organization be added as an additional insured on your policy under . . . a written contract or agreement that is in effect during the term of this policy and such contract is entered into prior to the 'occurrence' of any 'bodily injury.'" (Hudson Policy at ECF 2, 19.) Similarly, Gilston's CGL policy provides that policy coverage applies, as primary insurance, to "any person or organization when required in a written contract." (Gilston Policy, at ECF 16-17.) Hudson and Gilston both agreed, in the Subcontracts, that they would procure insurance that would include TPC as an additional insured (*see generally* Hudson Subcontract, Schedule B; Gilston Subcontract, Schedule B), and, based on the language of the policies that they each procured, as quoted above, it appears that they did so. (*See generally* Hudson Policy; Gilston Policy.)

As Hudson and Gilston have established that they each obtained a CGL policy that appears to have complied with their obligations under Schedule B of the Subcontracts, the burden shifts to TPC to establish a genuine dispute of material fact. *See Mason Tenders Dist. Council Welfare Fund v. LJC Dismantling Corp.*, 400 F. Supp. 3d 7, 13 (S.D.N.Y. 2019) (holding that, when a party moving for summary judgment has met "the initial burden of establishing that no genuine factual dispute exists," then "the burden shifts to the nonmoving party to 'set forth specific facts showing that there is a genuine issue for trial.'" (quoting

*Anderson,* 477 U.S. at 256)).  Yet TPC has pointed to no specific provision of Schedule B that either Hudson or Gilston violated with respect to their insurance coverage; nor does it argue that the language of either of their insurance policies does not, in fact, include TPC.  (*See generally* Def. Opp. to Hudson Mem.; Def. Opp. to Gilston Mem.)  Instead, TPC relies only on the fact that the insurers, The Hartford and Harleysville, have denied coverage to TPC for Plaintiff's claim of injury.  (*See generally* Def. Opp. to Hudson Mem.; Def. Opp. to Gilston Mem.)

The fact that The Hartford and Harleysville have denied coverage to the Tutor Perini Companies is not, standing alone, sufficient to create a genuine dispute as to whether Hudson and Gilston met their obligations under the Subcontracts.  *See Roffi v. Metro-N. Commuter R.R.*, No. 98cv8713 (THK), 2001 WL 1568319, at *10 (S.D.N.Y. Dec. 6, 2001) (granting summary judgment on breach-of-contract claim based on failure to name third-party plaintiff as an additional insured where third-party defendant "assert[ed] that th[e] [insurance] policy provide[d] the requisite level of insurance, and [third-party plaintiff] has not argued otherwise"); *see also Hall v. New Jersey Transit,* No. 13cv8633 (LGS), 2015 WL 1284257, at *3 (S.D.N.Y. Mar. 20, 2015) (granting summary judgment on breach of contract claim based on failure to name contractor as an additional insured, where plain language of the subcontractor's policy met obligations under the contract).

Moreover, while no party explains the circumstances of the carriers' denials, the parties do point out that there is a declaratory judgment action pending in state court, in which the Tutor Perini Companies are seeking a ruling that the carriers are required to defend and indemnify them on Plaintiff's claims.  Upon review of the Complaint in the state court action,[19] it appears

---

[19] A court may take judicial notice of filings in other courts for the fact of their filing, though not for the truth of their contents.  *Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 425 (2d Cir. 2008).

that the Hartford and Harleysville did not deny the Tutor Perini Companies coverage on the

grounds that they were not "additional insureds" under the contract.  (*See* Docket in Case

No. 653663/2018, Sup. Ct. N.Y. Cty., at Dkts. 1, 8, 10; *see also Roffi,* 2001 WL 1568319, at *10

(no genuine dispute of fact that third-party defendant did not breach the contract where insurer's

denial of coverage was "seemingly based on its understanding of the factual allegations in the

Complaint, and not on any sort of limitation on the scope of coverage under the insurance

policy").)

Tutor Perini having failed to come forward with "specific facts showing that there is a

genuine issue for trial," *Mason Tenders Dist. Council Welfare Fund,* 400 F. Supp. 3d at 13

(quoting *Anderson*), the Subcontractors' motions for summary judgment dismissing the Tutor

Perini Companies' breach-of-contract claims against them are appropriately granted.

## <u>CONCLUSION</u>

For all of the foregoing reasons, the Court resolves the pending motions for summary

judgment as follows:

1.   The motion of Plaintiff for partial summary judgment in his
     favor on liability, as against TPC (Dkt. 55), is granted.

2.   The motion of the Tutor Perini Companies for summary
     judgment (a) dismissing all of Plaintiffs' claims against
     TPBC, (b) in their favor on their contractual
     indemnification claims against the Subcontractors, and
     (c) in their favor on their common-law indemnification
     and/or contribution claims against Hudson (Dkt. 60), is
     denied in all respects;

3.   The motion of Hudson for summary judgment dismissing
     both the Tutor Perini Companies' third-party claims and
     Gilston's cross-claims against it (Dkt. 49), is granted to the
     extent Hudson seeks dismissal of TPC's claim against it for
     breach of contract, but is otherwise denied; and

4.  The motion of Gilston for summary judgment dismissing both the Tutor Perini Companies' third-party claims and Hudson's cross-claims against it (Dkt. 64) is granted to the extent Gilston seeks dismissal of (a) all common-law indemnification and/or contribution claims against it, and (b) TPC's claim against it for breach of contract, but is denied as to TPC's claim against it for contractual indemnification.

The Clerk of Court is directed to close the motions at Dkt. Nos. 49, 55, 60, and 64 on the Docket of this action.

The Court will hold a telephone conference with all parties on Thursday, April 24, 2020, at 10:00 a.m., to set a date for trial and a schedule for pretrial submissions. In accordance with the Court's Individual Practices, the parties are expected to confer in advance of that conference regarding their availability for trial and the expected length of trial. The parties should note, however, that it may not be feasible to schedule trial during the COVID-19 outbreak – a matter that the Court will also address at the April 24 telephone conference.

Dated: New York, New York
        March 18, 2020

                                        SO ORDERED

                                        _____
                                        DEBRA FREEMAN
                                        United States Magistrate Judge

Copies to:

All counsel (via ECF)

41